UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE P. LUNNEY, JR.,

               Plaintiff,

        -against-

THE CITY OF NEW YORK; EMILY CHASE,
Assistant Commissioner of Public Programs for
the N.Y.C. Department of Parks; PAUL
FONTANA,

               Defendants.

22-CV-7668 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed this complaint alleging

that Defendants violated his rights. By order dated December 19, 2022, the Court directed

Plaintiff to amend his complaint to address deficiencies in his original pleading. Plaintiff filed an

amended complaint on January 20, 2023, and the Court has reviewed it. The action is dismissed

for the reasons set forth below.

**STANDARD OF REVIEW**

      The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint,

that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

*see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must

also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised.

*See* Fed. R. Civ. P. 12(h)(3).

      While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

In his amended complaint, Plaintiff George Lunney alleges the following facts. On June 10, 2019, Plaintiff telephoned the New York City Department of Parks (DOP) about the "torn and tattered" state of the American flag flying outside the Williamsbridge Oval Recreation Center. (ECF 7 at 3.) During his phone call, Plaintiff was transferred to several employees, eventually reaching Karen Pedrosa, though he did not at that time know her name. Plaintiff informed Pedrosa about the tattered flag and that his phone call had been "bounced around." (*Id.*) She "rudely" responded that she "had enough headaches to deal with, " that "people have too much time on their hands [and] all they do is complain." (*Id.*) Pedrosa also allegedly said, "Fuck America. This country is corrupt," and hung up on Plaintiff. Plaintiff called back, but his call

went to a voicemail box. (*Id.* at 7.) He "left a voicemail for Ms. Pedrosa wherein . . . he chastised her for her rudeness and unprofessionalism and used profane or vulgar language," and he used racial epithets to characterize city employees. Plaintiff states that he does not recall exactly what he said, though he speculates about various derogatory terms that he may have used, and he notes that at the time he left the message, he had "no knowledge" of Pedrosa's "race or ethnicity." (*Id.* at 4.) After leaving the voicemail, Plaintiff then called "high ranking officials," including the Commissioner of the NYC DOP, to complain about Pedrosa.

On June 15, 2019, Plaintiff received a letter from Paul Fontana of the NYC DOP stating that there were numerous documented incidents where Plaintiff had used racist, vulgar, and profane language, both on the phone with NYC DOP staff and inside the Williamsbridge Oval Recreation Center. (*Id.*) The letter notified Plaintiff that "he may NEVER USE[1] any Parks Department recreation center again," and that if he wished to appeal this decision he could write to Emily Chase, who is the NYC DOP Assistant Commissioner of Public Programs.[2] (*Id.*) Plaintiff found this "partly absurd" because he had not been a member of the recreation center "for months" and had never committed such acts in the recreation center. (*Id.*) He contends that this ban was retaliation for "his attempts to have the torn and tattered American flag" replaced and for his complaints about Pedrosa's "rudeness." (*Id.* at 4-5.)

Plaintiff called Fontana about the letter, and he learned that Pedrosa had gone to the New York City Police Department's 47th Precinct to report the incident with Plaintiff. Detective Kelly had taken her complaint but no criminal charges have been pursued. A few days later, an

---

[1] It is unclear if this emphasis was in the original letter from Fontana or if Plaintiff has capitalized "NEVER USE" for emphasis.

[2] Plaintiff states that a copy of the letter is attached to his amended complaint, but the letter is not attached to the amended complaint on file with the Court.

investigator from the NYC Department of Investigations called Plaintiff and questioned him about the incident. Plaintiff told the investigator that he wished to file a formal complaint against Pedrosa for her rudeness and unprofessionalism. He has not heard anything further.

By letters dated June 30 and September 19, 2019, Plaintiff appealed Fontana's letter to Assistant Commissioner Chase. Plaintiff also spoke to Sarah Bishow-Semevolos at the recreation center, and she sent an email to Fontana stating that Plaintiff had not been involved in any incidents of misconduct, or using racist, vulgar, or profane language inside the Williamsbridge Oval Recreation Center.

On October 9, 2019, Assistant Commissioner Chase agreed that Plaintiff had not committed misconduct inside the Williamsbridge Oval Recreation Center but otherwise rejected his appeal. Plaintiff filed an Article 78 petition, and Justice Erika Edwards remanded the matter to Assistant Commissioner Chase "for redetermination of the penalty." (*Id.* at 6.) After remand, on November 22, 2022, Assistant Commissioner Chase upheld her earlier determination of the penalty. (*Id.* at 7.) Plaintiff then brought a new Article 78 petition, which remains pending in the Supreme Court of the State of New York, New York County, under docket number 101144/2022.

Plaintiff states that the City of New York has a "well patterned history" of banning citizens from using public services and facilities for a "repeated history" of misconduct. (*Id.* at 8.) He was "treated differently [from] those other people as plaintiff was banned for life from ever using or being a member of any NYC [DOP] recreation center based on one single isolated phone call he allegedly made to a[n] official." (*Id.* at 9.) He argues that "such ban was an attack on his right to Freedom of Speech under the First Amendment to the U.S. Constitution based on his engagement in using protected speech." (*Id.* at 9.)

Plaintiff contends that he was retaliated against, in violation of the First Amendment for raising concerns about the American flag and complaining about Pedrosa's professionalism. He also contends that Defendants violated his First Amendment rights in connection with his Article 78 petition by failing to submit opposition papers and requiring him to make additional submissions after remand. Plaintiff also asserts claims for violations of his constitutional rights, under the Fourteenth Amendment, to due process and equal protection.

Plaintiff sues Assistant Commissioner Emily Chase, Paul Fontana, and City of New York. He seeks $1,000,000 in damages and access to all NYC DOP recreation centers.

## DISCUSSION

### A.    First Amendment

To state a First Amendment retaliation claim, a private citizen must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) ("Regardless of the factual context, [courts] have required a plaintiff alleging retaliation to establish speech protected by the First Amendment.").

In his amended complaint, Plaintiff alleges that he was retaliated against for his speech that raised concerns about the torn and tattered American flag and for raising his concerns about Pedrosa's professionalism.[3] He further alleges that he received a letter banning him from NYC DOP recreation centers and that this decision was made "due to the evidence we have on file

---

[3] The Court does not understand Plaintiff to be asserting that his racist epithets are entitled to First Amendment protection.

[including] a voicemail that you left on June 11, 2019 in which you were disrespectful and used racial slurs and foul language." (ECF 7 at 8.) Plaintiff fails to include any allegations plausibly suggesting that the recreation-center-ban was "motivated or substantially caused" by his petition to have the flag replaced rather than being motivated by Defendants' stated reason that he was making racial slurs. He argues that Defendants' use of the word "including" means that the decision was based in part on incorrect information that he had engaged in inappropriate behavior in the Williamsbridge Oval Recreation Center, which he had demonstrated was false. (*Id.* at 8.) Plaintiff also alleged, however, that Assistant Commissioner Chase agreed that Plaintiff had not committed misconduct inside the Williamsbridge Oval Recreation Center but she still reached the same decision. (*Id.* at 6, ¶ 9.) Plaintiff has not pleaded any facts that could give rise to an inference that anything other than his use of "racial slurs and foul language" motivated or caused the ban.

Plaintiff's allegations that Defendants violated his First Amendment rights by (1) failing to submit an opposition brief to his Article 78 petition in the Supreme Court of the State of New York, and (2) requiring him to make additional submissions after the matter was remanded to the agency for re-examination of the penalty, fail to state a claim on which relief can be granted. The First Amendment does not encompass a right to a response in a legal proceeding or the right to be free from such an administrative requirement. The allegations of the amended complaint thus fail to state a Section 1983 claim for a violation of Plaintiff's rights under the First Amendment.

**B.     Due Process**

Plaintiff asserts a claim for a violation of his right to procedural due process. The two threshold questions in any Section 1983 claim for denial of procedural due process are "whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before plaintiff could be deprived of that

interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995); *Bryant v. New York State Educ. Dep'
t*, 692 F.3d 202, 218 (2d Cir. 2012) ("A procedural due process claim is composed of two
elements: (1) the existence of a property or liberty interest . . . and (2) deprivation of that interest
without due process.").

      Turning to the first inquiry, the Court considers whether Plaintiff has a protected property
interest in using, or being a member of, the Williamsbridge Oval Recreation Center. The
Supreme Court has held that:

> to have a property interest in a benefit, a person clearly must have more than an
> abstract need or desire for it. He must have more than a unilateral expectation of
> it. He must, instead, have a legitimate claim of entitlement to it. . . . Property
> interests, of course, are not created by the Constitution. Rather, they are created
> and their dimensions are defined by existing rules or understandings that stem
> from an independent source such as state law — rules or understandings that
> secure certain benefits and that support claims of entitlement to those benefits.

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

      "[W]hen the statutory scheme in question mandates award of the benefit upon satisfaction
of specified criteria, an applicant has a limited but sufficient interest in the receipt of that benefit
to 'warrant some measure of due process protection' in demonstrating his eligibility." *Kapps v.
Wing*, 404 F.3d 105, 113 (2d Cir. 2005). Moreover, "applicants for benefits, no less than current
benefits recipients, may possess a property interest in the receipt of benefits." *Id.* at 115.

      Courts considering whether individuals suspended from using similar city services have a
protected property interest in those services have generally concluded that they do not. *See, e.g.,
Glassman v. Stern*, No. 98-CV-5142 (JGK), 1998 WL 556034, at *10–11 (S.D.N.Y. Sept. 1,
1998) ("The plaintiff points to nothing in the regulations or any other provision of law which
provides an entitlement to play tennis at a specific facility or to use her Seasonal Permit at a
facility from which she is suspended."); *Brown v. Michigan City, IN*, No. 3:02-CV-572 RM,
2005 WL 2281502, at *5 (N.D. Ind. Sept. 19, 2005) (holding that plaintiff had no

"constitutionally protected property interest in a parking pass or his ability to enter public parks in Michigan City"), *aff'd*, 462 F.3d 720 (7th Cir. 2006).

In his amended complaint, Plaintiff alleges that he was not a member of the Williamsbridge Oval Recreation Center and had not been for "many months" before the incident occurred. (ECF 7 at 4.) Plaintiff asserts that he has a liberty interest in "accessing or using" this service provided by the City of New York. (*Id.* at 7.) He has not pleaded facts, however, showing that he has "a legitimate claim of entitlement" to recreation center membership under state law, rather than a unilateral expectation of it.[4]

Moreover, even if Plaintiff had a protected property interest, he has not sufficiently alleged that the process that he received was inadequate. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Due process does not, in all cases, require a hearing before the state *interferes* with a protected interest, so long as "some form of hearing is [provided] before an individual is finally deprived of [the] property interest." *Brody v. Vill. of Port Chester*, 434 F.3d 121, 134 (2d Cir. 2005) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

Here, Plaintiff alleges that he received Paul Fontana's June 2019 notice regarding the ban from the recreation center and the reasons therefore. He appealed that decision to Assistant Commissioner Chase, who sustained Plaintiff's objection that he had not made racist remarks inside the Williamsbridge Oval Recreation Center, but upheld the ban based on evidence of his racist, vulgar, and profane voicemail. Plaintiff then challenged that determination in an Article

---

[4] The Rules of the City of New York governing recreation centers operated by the New York City Department of Parks provide: "No person shall use any recreation center and/or participate in activities requiring the payment of a session fee as defined in this section unless such person has paid the applicable annual membership fee set forth in subdivision (c) of this section in addition to any applicable session fees." 56 RCNY § 2-14.

78 petition, which resulted in a remand for the administrative agency to reconsider the penalty, which according to Plaintiff is a lifetime ban on recreation center membership. On remand, the administrative agency reaffirmed the penalty, and Plaintiff is pursuing relief in an Article 78 petition challenging the November 2022 determination. Although Plaintiff argues that he should not have been required to submit additional material after remand, and that it was inappropriate for the administrative agency to reimpose the same penalty after remand, he has not alleged any facts suggesting that the procedures available to him are inadequate. Plaintiff thus fails to state a Section 1983 claim for the denial of procedural due process.

## C.      Equal Protection

Plaintiff alleges that the City of New York has a long-established pattern of limiting access to NYC DOP services to those who engage in repeated misbehavior. (ECF 7 at 8.) Plaintiff alleges that he was penalized based on "one single isolated phone call" and asserts a claim based on the fact that he was "treated differently." (*Id.* at 8-9.)

A plaintiff who does not allege membership in a protected class may state a cognizable claim of discrimination in violation of the Equal Protection Clause if he establishes that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diag. Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *Holmes v. Haugen*, 356 F. App'x 507, 509 (2d Cir. 2009) (summary order). To prevail on such a "class-of-one" equal protection claim, a plaintiff must establish that he and a comparator are "*prima facie* identical" by showing that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Hu* v. *City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Plaintiff's general allegations that he was punished for a one-time incident whereas others were not punished until they had engaged in multiple incidents of misconduct are insufficient to suggest that he was treated differently from similarly situated comparators. Plaintiff does not plead any facts about the type of misconduct engaged in by those he invokes as comparators or the sanctions imposed on them. He thus has not alleged that he and his comparators are "*prima facie* identical," such that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment." *Hu*, 927 F.3d at 92. Accordingly, Plaintiff fails to state a Section 1983 claim for a violation of his rights under the Equal Protection Clause.

**D.     Leave to Amend**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. Because the amended complaint gives no indication that it can be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court declines, under 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction of any state law claims that Plaintiff may be asserting.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would

not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an

appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in this matter.

SO ORDERED.

Dated:   March 6, 2023
         New York, New York

                                        /s/ Laura Taylor Swain
                                    _____
                                        LAURA TAYLOR SWAIN
                                    Chief United States District Judge